IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS LOMMA, et al., | :  |
| Plaintiffs, | : |
| v. | : 3:16-CV-2396 |
| | : (JUDGE MARIANI) |
| OHIO NATIONAL LIFE ASSURANCE CORPORATION, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court on remand from the Third Circuit Court of Appeals following Defendants' appeal of this Court's Order granting summary judgment in favor of Plaintiffs on their breach of contract claim. (Doc. 46). Following the Third Circuit's October 8, 2019, judgment, Plaintiffs requested that this Court hold further proceedings on remand to address any unresolved issues. (Doc. 62). For the reasons that follow, the Court will deny Plaintiff's Motion to Strike Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint (Doc. 41) and grant Defendants' Motion for Summary Judgment on the breach of contract claim (Doc. 31).

### II. BACKGROUND AND PROCEDURAL HISTORY

In September of 1986, Pennsylvania National Life Insurance Company issued Lora Marie Lomma a universal life insurance policy (the "Original Policy") for $25,000 in coverage. (Original Policy, Doc. 29-2 at 2). The Original Policy contained a suicide

exclusion, which states "SUICIDE: if within two years from the Issue Date, the Insured, while sane or insane, commits suicide, our liability will be limited to a refund of the premium paid less any Policy Indebtedness and Partial Withdrawals." (*Id.* at 15). In 1994, Defendants Ohio National Life Assurance and/or Ohio National Life Insurance Company assumed and began administering Ms. Lomma's Original Policy. (*See* Mem. Op. Granting in Part and Denying in Part Summ. J. to Lomma, Doc. 45 at 3). In December of 1995, Ms. Lomma increased the coverage amount of the Original Policy from $25,000 to $100,000. (December 14, 1995, Letter from Defendants to Lori Lomma, Doc. 29-3 at 3).

On June 6, 2007, Ms. Lomma applied for a renewable term life insurance policy with Defendants for $100,000 in coverage (the "Term Policy"). (Term Policy, Doc. 31-3 at 1–34). On August 15, 2007, Defendants issued the Term Policy to Ms. Lomma with a benefit value of $100,000. The Term Policy, like the Original Policy, contains a suicide exclusion, which states:

> If the insured dies by suicide while sane or insane or by intentional self-destruction while insane, we will not pay any death proceed[s] payable on amounts of insurance which have been in effect for less than 2 years. If the suicide or intentional self-destruction is within the first 2 contract years, we will pay as death proceeds the premiums you paid.

(Term Policy, Doc. 31-3 at 13).

In May 2009, Ms. Lomma committed suicide. Shortly after Ms. Lomma's death, Anthony Lomma filed a claim for benefits on behalf of his children, the beneficiaries under the Term Policy. Defendant Ohio National Life Assurance informed Mr. Lomma they would

not pay the full benefit because an investigation revealed that Ms. Lomma's death occurred by suicide, and in accordance with the policy's suicide exclusion, "the death proceeds for death due to 'Suicide' within the first two contract years is a refund of premiums paid." (August 31, 2009, Letter from Defendants to Anthony Lomma, Doc. 31-3 at 36). The letter states that Defendants would instead pay "$285.12 plus interest at 4.5%," which represents the "premiums paid on the policy." (*Id*).

Plaintiffs sued Defendants in the Court of Common Pleas of Lackawanna County for the full $100,000 in coverage, alleging five causes of action: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; (4) breach of implied covenant of good faith and fair dealing; and (5) statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. (Doc. 1-4). Defendants subsequently removed the complaint to this Court. (Doc. 1).

On December 9, 2016, Defendants timely filed a motion to dismiss the claims against them. (Doc. 4). On September 6, 2017, the Court dismissed the unjust enrichment and promissory estoppel claims, and denied Defendant's motion with respect to the breach of contract, breach of implied covenant of good faith and fair dealing, and statutory bad faith claims. (Doc. 25).

On December 20, 2017, the parties each filed timely cross-motions for summary judgment. (Docs. 29, 31). On the same day, Plaintiffs also made a Request for Entry of Default pursuant to Federal Rule of Civil Procedure 55(a) (Doc. 32), a Motion for Default Judgment pursuant to Rule 55(b)(1) (Doc. 33), and a Motion for Default Judgment pursuant

to Rule 55(b)(2) (Doc. 34). The next day, on December 21, 2018, Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Complaint. (Doc. 36).

On January 4, 2018, the Court denied Plaintiffs' motions and directed the Clerk not to enter default against Defendants. (Doc. 37). Plaintiffs' subsequently filed a Motion to Strike Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint. (Doc. 41).

On June 28, 2018, the Court granted summary judgment to Plaintiffs on the breach of contract claim, holding that (1) the Term Policy contains a latent ambiguity because Ms. Lomma could have interpreted the phrase "contract years" to mean the duration of her contractual relationship with Defendants, not simply the time period in the Term Policy, (2) the Notice and Illustration of Benefits have qualifying language and do not show that the suicide exclusion period began in 2007, and (3) Plaintiffs established that Ms. Lomma could have reasonably believed that the suicide exclusion expired two years after she initially began paying premiums on a $100,000 life insurance policy. (Mem. Op. Granting in Part and Denying in Part Summ. J. to Lomma, Doc. 45 at 16–25). The Court denied Plaintiffs' Motion for Summary Judgment in all other respects, and granted Defendant's Motion for Summary Judgment in part with respect to Plaintiff's breach of implied covenant of good faith and fair dealing claim and statutory bad faith claim (Counts IV and V of Plaintiffs' Complaint). The Court also denied Plaintiffs' Motion to Strike as moot. (Doc. 46).

Defendant appealed, and on October 8, 2019, the Third Circuit reversed this Court's Order granting summary judgment, holding that "[i]nterpreting 'contract years' in the context

4

of the entire Term Policy therefore demonstrates that the phrase unambiguously refers to August 10th [2007], the Policy Date . . . Accordingly, the District Court erred in determining that the Term Policy contains a latent ambiguity." *Lomma v. Ohio Nat'l Life Assurance Corp.*, 788 F. App'x 104, 108 (3d Cir. 2019). The Circuit Court further held that "Ms. Lomma also could not have reasonably interpreted the phrase 'contract years' to mean the duration of her contractual relationship with Ohio National Life Assurance and thus reasonably believed that the suicide exclusion expired two years after she obtained the $100,000 coverage under the Universal Policy in 1995." *Id*. The Court determined that "neither the communications surrounding Ms. Lomma's purchase of the Term Policy nor the language of the Term Policy supports a reasonable expectation of coverage." *Id*. at 109. Having reversed this Court's Order granting summary judgment in favor of Plaintiffs on the breach of contract claim, the Third Circuit remanded the case to this Court "for further proceedings consistent with this opinion." *Id*.

Shortly after remand, the case was reopened. Following a status conference with the parties and a request by Plaintiffs, the Court permitted Plaintiffs' counsel to file a written report with the Court concerning whether the matter would be subject to further proceedings. (Doc. 58). In their brief, Plaintiffs argue that "[i]n declining to enter judgment and remanding the case, the USCA obviously deemed that there are unresolved issues that must be decided." (Plaintiffs' Brief in Support of Further Proceedings on Remand, Doc. 62 at 3). Specifically, Plaintiffs ask the Court to reconsider their previous Motion to Strike, as

5

well as the refund of premiums paid on the Policy plus interest. (*Id.* at 2). Defendants disagree, and argue that the Court is "required to enter judgment consistent with the Third Circuit's Opinion, and should therefore: (1) reverse the grant of summary judgment in favor of Plaintiffs on the Breach of Contract claim; and (2) enter judgment in favor of Ohio National. (Defendants' Brief in Opposition to Plaintiffs" Request for Further Proceedings on Remand, Doc. 63 at 4).

### III. ANALYSIS

Upon the Third Circuit's reversal of this Court's Order granting summary judgment to Plaintiffs on the breach of contract claim, the Court will now consider the present procedural posture of the case. As to Plaintiffs' Motion to for Summary Judgment (Doc. 29), the Court concludes there is nothing further to consider. This is because the Court previously denied Plaintiffs' Motion for Summary Judgment on all claims other than the breach of contract claim, the grant of which the Third Circuit has since reversed. As to Defendants' Motion for Summary Judgment (Doc. 31), in light of the Third Circuit's decision, the Court must now reconsider its previous denial of Defendants' motion on the breach of contract claim. The Court must also consider the status of Plaintiffs' Motion to Strike Defendants' Answer and Affirmative Defenses to Plaintiffs' to Complaint (Doc. 41), as the Court previously deemed this motion moot in light of the favorable ruling on Plaintiffs' Motion for Summary Judgment. The Court will also consider whether any further action is necessary with regard to the

refund of the premiums paid on the Term Policy plus interest. Based on this procedural posture, the Court will first address Plaintiffs' Motion to Strike.

### A. Plaintiffs' Motion to Strike

Several weeks after the parties filed their cross-motions for summary judgment, Plaintiffs moved to strike Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(f). (Doc. 41). Because the Court ruled in Plaintiffs' favor on their Motion for Summary Judgment on the breach of contract claim, the Court properly dismissed Plaintiffs' Motion to Strike as moot. (Mem. Op. Granting in Part and Denying in Part Summ. J. to Lomma, Doc. 45 at 32 (citing *United States v. Beeman*, 2010 WL 653062, at *13 (W.D. Pa. 2010) (granting motion for summary judgment by Plaintiffs and holding that Plaintiffs' "pending motion to strike [defendant's] answer to the complaint will be denied as moot."), *aff'd*, 388 F. App'x 82 (3d Cir. 2010))).

Plaintiffs now argue that because the Third Circuit reversed this Court's Order granting Plaintiffs' Motion for Summary Judgment, their Motion to Strike Defendants' Answer to Complaint is no longer moot. (Plaintiffs' Brief in Support of Further Proceedings on Remand, Doc. 62 at 3). Defendants disagree, arguing that "[t]he lack of a cross appeal by Plaintiffs on these issues means that the issues are waived." (Defendants' Brief in Opposition to Plaintiffs' Request for Further Proceedings on Remand, Doc. 63 at 6 (citing *EF Operating Corp. v. American Buildings*, 993 F.2d 1046, 1049 (3d Cir. 1993))). The Court concludes that Defendants' reliance on *EF Operating* is misplaced. In *EF Operating*, the

7

Third Circuit addresses waiver of an issue on appellate review. Here, the right to appeal an issue to the Third Circuit is not at issue. This Court previously ruled that Plaintiffs' Motion to Strike was *moot* in light of the Court's summary judgment ruling in favor of Plaintiffs. Given the Third Circuit's reversal of the summary judgment ruling with the added instruction to hold "further proceedings consistent with this opinion," the Court concludes that the motion to strike is properly considered on remand and is ripe for decision. *Lomma*, 788 F. App'x at 109.

Federal Rule of Civil Procedure 12 provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

> District courts are afforded considerable discretion when addressing a motion to strike. Generally, motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

*Yellow Book Sales & Distrib. Co., Inc. v. White*, 2011 WL 830520, at *4 (E.D. Pa. 2011) (internal citations and quotation marks omitted). "[S]triking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record." *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 857 (M.D. Pa 2015) (quoting *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011)); *see also DeLa Cruz v. Piccari Press*, 521 F.Supp.2d 424, 428 (E.D. Pa. 2007) (quoting *N. Penn Transfer, Inc.,* 859 F.Supp. at 158) ("Indeed, striking a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice' and should be used 'sparingly.'")

Here, Plaintiff does not contend that Defendants' Answer contains any allegations that are redundant, immaterial, impertinent, or concern a scandalous matter. Rather, Plaintiffs seek to strike Defendants' pleading as untimely. In support of their motion, Plaintiffs cite to Fifth Circuit case *DirecTV, Inc. v. Young,* 195 F. App'x 212, 215 (5th Cir. 2006) for the proposition that Rule 12(f) empowers a court to strike a defendant's answer when it is filed outside of the time period mandated by Rule 12. The Court finds that this case is readily distinguishable from *DirecTV.* In *DirecTV*, the Fifth Circuit found that the District Court did not abuse its discretion when it granted the plaintiff's motion to strike the defendant's answer given that the defendant's failure to timely file was willful. *Id.* The Court found this was evidenced by the defendant's repeated failures to communicate with the plaintiff's counsel, respond to settlement demands, respond to the plaintiff's request for default, or otherwise litigate the matter. *Id.* Here, however, there is ample evidence that Defendants were actively communicating with Plaintiffs' counsel and participating in the litigation, exemplified by Defendants' timely filing of a Motion to Dismiss (Doc. 4), a Reply Brief (Doc. 11), a Motion for Summary Judgment (Doc. 31), their participation in several telephone conferences before the Court (Docs. 13, 20), and their concurrence in multiple joint motions for extension of time (Docs. 22, 27).

Plaintiffs argue that they are "irreparably injured and harmed by Defendants filing their Answer and Affirmative Defenses out of time, without leave of the court and without showing good cause or excusable neglect, and are further harmed if said Answer and

Affirmative Defenses are not stricken." (Doc. 62 at 5). Plaintiffs provide no analysis as to how they are so prejudiced by Defendants' late filing.

Although the motion to strike was determined moot, the Court acknowledged at summary judgment that "Plaintiffs have not pointed to any real prejudice resulting from Defendants' untimely answer, given that the parties apparently understood the legal and factual issues of the case sufficiently to file cross-motions for summary judgment before the answer was filed." (Mem. Op. Granting in Part and Denying in Part Summ. J. to Lomma, Doc. 45, at 33 n.5). Just as there was no basis upon which to find prejudice to Plaintiffs at the time the Motion to Strike was filed, Plaintiffs provide no basis to find prejudice now, in that they have not pointed to any change in circumstances in their most recent filing. Thus, the Court again finds that Plaintiffs have failed to demonstrate how Defendants' failure to file an Answer and Affirmative Defenses in a timely manner resulted in any prejudice to them in this matter.[1]

---

[1] To fully understand the lack of prejudice to Plaintiffs, it is important to view this Motion to Strike in light of the circumstances at the time the motion was filed. The Court's Order ruling on Defendants' Motion to Dismiss was filed September 6, 2017. (Doc. 25). According to Rule 12, Defendants were required to file their Answer by September 20, 2017. Fed. R. Civ. P. 12(a)(4)(A). No filings were made by either party until November 16, 2017, when the parties concurred in a Joint Motion to Extend the deadline for filing dispositive motions. (Doc. 27). In this motion, Plaintiffs made no mention of Defendants' failure to file a timely answer, which was 57 days tardy at that point.

The next filings in this matter occurred on December 20, 2017, when both parties filed cross-motions for summary judgment. (Docs. 29, 31). Later that same day, Plaintiffs made several filings in support of entry of default and for default judgment against Defendants. (Docs. 32, 33, 34). The next day, December 21, 2017, Defendants filed their Answer and Affirmative Defenses to Plaintiffs' Complaint. (Doc. 36). On January 4, 2018, the Court denied Plaintiffs' motions for entry of default judgment and directed the Clerk not to enter default against Defendants. (Doc. 37). In denying Plaintiffs' motions, the Court made a similar assessment, noting that an entry of default would not be appropriate, as "Defendants have defended

As the Third Circuit has repeatedly stated, Courts prefer adjudications on the merits. *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) ("we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable")). Plaintiffs have failed to demonstrate any reason why the Court should abjure this preference and strike Defendants' pleading for untimeliness. Therefore, the Court will deny Plaintiffs' Motion to Strike.[2]

## B. Defendants' Motion Summary Judgment on the Breach of Contract Claim

As set out previously, based on the Third Circuit's reversal of the Court's Order granting summary judgment in favor of Plaintiffs on the breach of contract claim, the Court must reconsider its previous denial of Defendants' Motion for Summary Judgment on this claim.

---

the suit by filing a timely motion to dismiss, a timely motion for summary judgment, and otherwise participated in the litigation process, including attending a status conference with the Court and conferring with Plaintiffs regarding discovery and other pretrial deadlines." (*Id.* at 2). Within a week of the Court's Order, Plaintiffs' filed their Motion to Strike Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint. (Doc. 41).

As the procedural history demonstrates, the numerous timely motions filed by each party indicate that the litigation process was steadily moving forward, despite Defendants' failure to file their Answer and Affirmative Defenses within 14 days of the Court's Order denying Defendants' Motion to Dismiss.

[2] The propriety of this result is abundantly clear given the Third Circuit's assessment of the merits of Plaintiffs' breach of contract claim. If the Court were to grant Plaintiffs Motion to Strike Defendants' Answer to Complaint, and the allegations in Plaintiffs' Complaint were deemed admitted, it could not ultimately lead to a favorable outcome for Plaintiffs. As discussed in Part III.B. infra, the Third Circuit held on appeal that the Term Policy issued to Ms. Lomma unambiguously commenced on August 10, 2007, which, per the two-year suicide exclusion, prevents her beneficiaries from recovering full death benefits. *Lomma*, 788 F. App'x at 108. This Court is bound to follow the law of the Third Circuit. *See A.A. ex rel. E.A. v. Exeter Tp. School Dist.*, 485 F.Supp.2d 587 (E.D. Pa. 2007) ("[i]t is axiomatic that a district court is bound to apply its appellate court's precedent."). Thus, in applying the Third Circuit's decision, Plaintiffs cannot prevail on the merits of their breach of contract claim.

11

In their Motion for Summary Judgment, Defendants argued that the suicide exclusion unambiguously bars coverage for the full policy value of $100,000, as "the Policy was issued on August 15, 2007 and Ms. Lomma committed suicide on May 24, 2009, well within the first two Contract Years of the Ohio National Term Policy." (Brief in Support of Defendants' Motion for Summary Judgment, Doc. 31 at 16). Defendants further argue that "Plaintiffs have not adduced any evidence that the Insured had a subjective expectation of coverage beyond the terms of the Policy." (*Id*).

Under Pennsylvania law, where contract language is clear and unambiguous, the Court must follow it. *Minn. Fire & Cas. Co. v. Greenfeld*, 579 Pa. 333, 855 A.2d 854, 861 (2004). Pennsylvania has also adopted the reasonable expectations doctrine, which "dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir. 1997) (citing *Collister v. Nationwide Life Insurance Co.*, 388 A.2d 1346 (Pa. 1978) and *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 521 A.2d 920 (Pa. 1987)). Under this analysis, courts must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." *Moessner*, 121 F.3d at 903 (quoting *Dibble v. Sec. of Am. Life Ins. Co.*, 590 A.2d 352, 354 (Pa. Super. Ct. 1991)).

Interpreting the contract at issue here, the Third Circuit held that "the District Court erred in determining that the Term Policy contains a latent ambiguity." *Lomma*, 788 F. App'x at 108. In so holding, the Third Circuit determined that the term "'contract years' in

the context of the entire Term Policy demonstrates that the phrase unambiguously refers to August 10th [2007], the Policy Date." *Id*. The Third Circuit further held that "neither the communications surrounding Ms. Lomma's purchase of the Term Policy nor the language of the Term Policy supports a reasonable expectation of coverage." *Id*. at 109. The Circuit Court also found that Ms. Lomma "could not have reasonably interpreted the phrase 'contract years' to mean the duration of her contractual relationship with Ohio National Life Assurance and thus reasonably believed that the suicide exclusion expired two years after she obtained the $100,000 coverage under the Universal Policy in 1995." *Id*. at 108.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applying the standard here, the Third Circuit's holding indicates that Defendants are entitled to summary judgment on the breach of contract claim. Here, the undisputed facts show that the suicide exclusion in the Term Policy provides "[i]f the insured dies by suicide while sane or insane by intentional self-destruction while insane, we will not pay any death proceed[s] payable on amounts of insurance which have been in effect for less than 2 years." (Term Policy, Doc. 31-3 at 13). The facts also show that Ms. Lomma's death by suicide occurred in May of 2009, which was within two years of the August 10, 2007 contract date found by the Third Circuit. Therefore, the explicit language of the Term Policy's suicide exclusion unambiguously prevents Plaintiffs from recovering the full $100,000 in death benefits. Further, consistent with the Third Circuit's holding, Ms. Lomma

13

had no reasonable expectation of coverage under the circumstances of this case, where the two policies "are entirely different policies, were issued under different policy numbers, and contain different terms, with the first policy providing universal life insurance and the second policy providing term life insurance." *Lomma*, 788 F. App'x at 109. For these reasons, this Court will grant summary judgment in favor of Defendants on the breach of contract claim.

### C. Refund of Premiums Paid

Plaintiffs further argue that "an issue regarding the refund of the premiums paid and the interest on those premiums" remains in this matter. (Doc. 62 at 7). More specifically, Plaintiffs argue they are "entitled to the return of the paid premiums pursuant to the insurance policy and would be further entitled to interest on those paid premiums." *Id.* By contrast, Defendants assert that they have already paid Plaintiffs $285.12 plus interest at 4.5%. (Doc. 63 at 8–9). Defendants point to a copy of Ohio National's letter transmitting the check for the refund of premiums with interest, which is attached to Plaintiffs' Complaint as Exhibit E. (Doc. 1-4 at 69 ("[w]e are enclosing our checks made payable to you as natural guardian for the minor beneficiaries, Nicholas A. Lomma and James M. Lomma, in the amount of $144.27 and $144.27, respectively. These checks represent the premiums paid on the policy in the amount of $285.12 plus interest at 4.5%.")). The Court previously determined at summary judgment that this fact is undisputed.[3] Plaintiff has not indicated

---

[3] At summary judgment, the Court noted in the Statement of Undisputed Facts that "[o]n August 31, 2009, Defendants informed Mr. Lomma that they would not pay the full benefit value under the policy, but

otherwise in any subsequent filings with this Court. Therefore, the Court does not find any further action on this matter is warranted.

### IV. CONCLUSION

For the above-discussed reasons, the Court will deny Plaintiff's Motion to Strike Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint (Doc. 41), grant Defendants' Motion for Summary Judgment on the breach of contract claim (Doc. 31), and enter judgment in favor of Defendants Ohio National Life Assurance Corporation and Ohio National Life Insurance Company on the breach of contract claim. Because this Court previously dismissed Plaintiffs' claims of unjust enrichment and promissory estoppel by Order dated September 6, 2017 (Doc. 25), and previously granted summary judgment in favor of Defendants on Plaintiffs' claims of breach of implied covenant of good faith and fair dealing and statutory bad faith by Order dated June 28, 2018 (Doc. 46), a separate Order will be issued granting summary judgment in favor of Defendants and closing the case.

*[signature]*

Robert D. Mariani
United States District Judge

---

instead, pay '285.12 plus interest at 4.5%,' which represents the 'premiums paid on the policy.'" (Mem. Op. Granting in Part and Denying in Part Summ. J. to Lomma, Doc. 45 at 6–7).